UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER CANTON,<br><br>           Plaintiff<br><br>vs.<br><br>UNITED PARCEL SERVICE COMPANY,<br><br>           Defendant. | NO. CV-06-0097-EFS<br><br>**ORDER GRANTING DEFENDANT UNITED PARCEL SERVICE CO.'S MOTION FOR SUMMARY JUDGMENT AND CLOSING FILE** |

Before the Court, without oral argument, is Defendant United Parcel Service ("UPS") Company's Motion for Summary Judgment (Ct. Rec. 52). UPS contends Plaintiff Christopher Canton failed to present sufficient facts to establish that he either suffered workplace harassment based on his race or retaliation for reporting alleged workplace behavior constituting racial harassment. Mr. Canton largely agrees with UPS's statement of the facts; yet, contends that when the facts are viewed in his favor genuine issues of material fact exist for trial. The Court having reviewed the record and relevant authority is fully informed. For the reasons stated herein, UPS's motion is granted.

///

///

///

ORDER ~ 1

## I.  Factual Statement[1]

Mr. Canton started working for UPS in May 1988 as a part-time employee, (Ct. Rec. 1); and on March 27, 1995, he became a full-time package car driver. (Ct. Rec. 57: Bond. Decl. ¶ 1.) He continues to work as a package car driver today based out of UPS's Spokane Center. (Ct. Rec. 1). Throughout his employment, Mr. Canton has been represented by the International Brotherhood of Teamsters. (Ct. Rec. 57: Bond Decl. ¶ 3.)

Although UPS has a Professional Conduct and Anti-Harassment Policy that each employee is required to review and sign (Ct. Rec. 58: Decl. Cramer ¶ 7 & Ex. D), Mr. Canton contends this policy is not enforced. This policy states that UPS "prohibits unprofessional, and discourteous actions, even if those actions do not constitute unlawful harassment." *Id.* at Ex. D. The policy directs any:

> employee who witnesses objectionable conduct or believes that he or she is subject to or may be subjected to objectionable conduct [to] report it immediately to a supervisor or manager, a Human Resources representative, the Human Resources manager, the Employee Relations manager, or the UPS Help Line at 1-800-220-4126.

*Id.* "In response to such reports, UPS . . . conduct[s] a prompt and thorough investigation" and takes "immediate and appropriate corrective action whenever it determines that harassment has occurred." *Id.* It is Mr. Canton's position that employees are intimidated from reporting

---

[1] In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to Plaintiff, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created utilizing this standard.

ORDER ~ 2

objectionable conduct; however, he agrees that a reported situation will be investigated immediately.

Mr. Canton's harassment claims are based in part on statements made to him by coworkers and a supervisor. The first incident occurred in December 2004 between Mr. Canton and fellow driver Kevin Harmon when Mr. Harmon called him a "boy." (Ct. Rec. 57 ¶ 5.) Mr. Canton complained to his manager, Paul Bond, who investigated the incident and counseled Mr. Harmon regarding UPS's expectations for appropriate workplace behavior. *Id.*

On January 6, 2005, Mr. Canton claims that his co-worker Justin Mulvey called him "boy." (Ct. Rec. 56-2: Canton Dep. 28:16-29:24.) Mr. Canton reported this incident to his supervisor, Clive Luiten, who told Mr. Canton that if "you have a problem with someone calling you 'boy,' you need to report it to Mr. Paul Bond." *Id.* Mr. Bond investigated the incident and issued Mr. Mulvey a written warning for unprofessional behavior on January 11, 2005. *Id.* at 33:23-34:1; Ct. Rec. 57 at Ex. A.

On March 4, 2005, Mr. Canton's supervisor, Richard "Monte" Hall, rode along with Mr. Canton on his route. (Ct. Rec. 56-2: Canton Dep. at 109:4-109:25.) Mr. Canton received and accepted positive feedback from Mr. Hall, but disagreed with some of Mr. Hall's suggestions for improvement. *Id.* at 49:15-50:4. During the ride, a dispute arose between Mr. Canton and Mr. Hall. Mr. Hall recounted the events of the day in a written statement (Ct. Rec. 58 Ex. A); which Plaintiff contends is 75% true and 25% false, largely disputing Mr. Hall's recitation of what occurred at the Fairchild Air Force Base delivery, including whether Mr. Hall called Mr. Canton a "nigger." (Ct. Rec. 56-2: Canton

ORDER ~ 3

Dep. at 109:4-109:25; Ct. Rec. 69 ¶ 20.)  Mr. Canton reported the incident to either his manager, Paul Bond, or UPS's Employee Relations Manager, Alton Edwards, on March 4, 2005. (Ct. Rec. 56-2: Canton Dep. 63:17-25.)  Mr. Edwards directed Stan Cramer, UPS's Human Resources Representative in Spokane, to investigate the incident.  (Ct. Rec. 58: Cramer Decl. ¶ 2 & Ex. B.)  On March 7, 2005, Mr. Cramer interviewed two soldiers, who were in the Fairchild Air Force Base office when the exchange between Mr. Canton and Mr. Hall occurred.  *Id.* ¶ 4 & Ex. B. UPS determined Mr. Canton's version of the events was not substantiated. *Id.* ¶ 5.

On March 15, 2005, Mr. Bond and Mr. Cramer met with Mr. Canton in Mr. Bond's office to discuss the incident between Mr. Canton and Mr. Hall.  (Ct. Rec. 56-2:  Canton Dep. at 64:13-23; Ct. Rec. 58: Cramer Decl. ¶ 6 & Ex. C.)  Mr. Bond's office is a cramped, windowless space with a desk and three chairs.  (Ct. Rec. 56-2: Canton Dep. at 67:22-68:24.)  During the conversation, Mr. Bond was seated behind his desk, Mr. Cramer was seated near the corner of Mr. Bond's desk, and Mr. Canton was seated in a chair with its back against the door. *Id.*  Mr. Hall entered the office during the meeting and struck Mr. Canton's chair with the door when he pushed the door open.  *Id.* at 68:24-69:25; 70:12-21. Mr. Bond informed Mr. Hall that they were having a closed-door meeting. Mr. Hall stated he was looking for a clipboard; Mr. Cramer provided Mr. Hall with a clipboard. *Id.* at 76:9-77:2.  Mr. Hall left without further incident. *Id.* at 71:14-71:23.  Mr. Hall did not touch Mr. Canton during this incident; however, Mr. Canton believes, if Mr. Cramer had not been in the office, Mr. Hall would have physically attacked Mr. Canton. *Id.*

ORDER ~ 4

Mr. Bond advised Mr. Canton he would talk to Mr. Hall about the incident. (Ct. Rec. 58: Cramer Decl. Ex. C.)  Subsequently, Mr. Bond counseled Mr. Hall that in the future he should knock before entering Mr. Bond's office when the door was closed and that he should have refrained from coming into Mr. Bond's office despite needing a clipboard. (Ct. Rec. 57: Bond Decl. ¶ 7 & Ex. B.)  Mr. Bond documented his counseling session with Mr. Hall in a memorandum that was placed in Mr. Hall's personnel file.  *Id.*

UPS employs loaders whose job is to load three to four of UPS's package cars each day at its Spokane facility before the UPS drivers arrive for work.  *Id.* ¶ 2.  Loading points for UPS's package cars are frequently adjusted to more evenly distribute the work among its loaders.  When making decisions about where to locate package cars for loading, UPS considers factors such as the size of the car and ease with which the loading can be shifted to another location.  *Id.* ¶ 9.  In contrast to UPS's loaders, UPS drivers typically spend only 15-20 minutes of their day at the UPS facility before they head out to make deliveries.  *Id.* ¶ 10.

The loading location for Mr. Canton's package car, which serves only one destination zip code and is the largest model package car that UPS has in Spokane, has been moved on a number of occasions.  *Id.* ¶¶ 14 & 15.  For instance, in December 2004, Mr. Canton's package car was moved to the satellite area for loading and was moved back to the main building shortly after the Christmas holiday. Id. ¶ 15.  In April 2005, after Mr. Canton filed a complaint with the Human Rights Commission, his package car was moved to the satellite area for loading; it was moved

ORDER ~ 5

back to the main building in June 2005. *Id.* This relocation in April 2005 also included UPS moving twelve other package cars to the satellite area; however, Mr. Canton's package car was the only package car from the South Center building moved to the satellite area. *Id.*; Ct. Rec. 69 ¶¶ 43-52. Later, in September 2005, Mr. Canton's package car was moved to the satellite area for loading and was moved back to the main building in January 2006. (Ct. Rec. 57: Bond Decl. ¶ 15.) Then, in March 2006, his package car was again moved to the satellite area, where it currently remains. (Ct. Rec. 56-2: Canton Dep. at 83:4-7; Ct. Rec. 57: Bond Decl. ¶ 15.) Mr. Canton is happy in his current location, even though his package car is stationed at the satellite area, along with other South Center package cars. (Ct. Rec. 56-2: Canton Dep. at 294:6-14.)

## II. Summary Judgment Standard

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id.* at 248. In other words, issues of fact are not material and do not preclude

ORDER ~ 6

summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.* There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### III. Harassment Claim

Mr. Canton brings this lawsuit under Title VII of the Civil Rights Act of 1964, the equal opportunity employment provision, which can be found at 42 U.S.C. § 2000e.[2] In order to make out a prima facie race

---

[2] Section 2000e-2(a)(1) provides:

It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privilges of employment, because of such indivdual's race, color, religion, sex, or national original.

ORDER ~ 7

harassment claim under Title VII, Mr. Canton must demonstrate (1) he was subjected to verbal or physical conduct because of his race, (2) such conduct was unwelcome, and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Manatt v. Bank of Am., NA,* 339 F.3d 792, 799 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 817 (9th Cir. 2002)); *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998). Mr. Canton bases his Title VII harassment claim on five instances of workplace behavior: (1) co-worker Kevin Harmon calling him "boy" in December 2004, (2) co-worker Justin Mulvey calling him "boy" in January 6, 2005, (3) supervisor Clive Luiten using the phrase "boy", (4) supervisor Richard "Monte" Hall calling him "nigger" on March 4, 2005, and (5) Mr. Hall causing a door to hit the back of the chair in which Mr. Canton was seated on March 15, 2005. Assuming these events did occur and were racially motivated, the Court finds these facts individually and collectively do not rise to the level of racial harassment.

Although the "boy" and "nigger" comments directed at Mr. Canton were offensive and unwelcome, the Court concludes the conduct alleged in the instant case falls short of conduct that is severe or pervasive enough to create an abusive work environment. In order for racial slurs to constitute an abusive work environment, they must be pervasive and occur more than sporadically. *Bolden v. PRC Inc.* 43 F.3d 545 (10th Cir. 1995) (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-13 (10th Cir. 1987)). Far more offensive conduct than the conduct alleged in

ORDER ~ 8

this case has been held not to create an abusive work environment. *See Vasquez v. County of Los Angeles,* 307 F.3d 884, 893 (9th Cir. 2002); *Kortan v. Cal. Youth Auth.,* 217 F.3d 1104, 1107-11 (9th Cir. 2000) (finding where a supervisor referred to women as "bitches" and "histrionics" and referring to a specific female as a "madonna," "regina," and a "castrating bitch," plaintiff had not demonstrated an abusive work environment); *see also Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1995) (referring to plaintiff as a "nigger" and "honkey" and warning him that the speaker knew someone in the Ku Klux Klan was not sufficiently pervasive to be actionable); *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 293 (E.D. Tex. 1996) (subjecting plaintiff to name calling such as "black yankee," "nigger," and "son" and insulting black political leaders four to six times during the year did not create a hostile work environment); *Haskins v. Owens-Corning Fiberglas Corp.*, 811 F. Supp. 534, 538 (D. Or. 1992) (being called a "nigger" by a coworker approximately every four days was insufficient to rise to the level of pervasive workplace harassment). Furthermore, after each of these incidents, UPS managers investigated each of the incidents and disciplined employees when it was determined that inappropriate conduct occurred. *See McCray*, 942 F. Supp at 294. Therefore, Mr. Canton's claim of harassment under Title VII fails. Accordingly, UPS's Motion for Summary Judgment with respect to Mr. Canton's Title VII racial harassment claim is granted.

### VI. Retaliation Claim

UPS also asks the Court to grant summary judgment in its favor on Mr. Canton's retaliation claim. Mr. Canton claims UPS moved the

ORDER – 9

location of his loading site in retaliation for his filing of a discrimination complaint. To establish a prima facie case of retaliation under Title VII, Mr. Canton must demonstrate (1) he engaged in activity protected under Title VII, (2) his employer subjected him to an adverse employment action, and (3) the employer's action was causally linked to the protected activity. *See Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003); *Jurado v. Eleven-Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir. 1987). For purposes of this motion, UPS does not contest that Mr. Canton engaged in protected activity; but rather UPS contends Mr. Canton has not suffered an adverse employment action that is linked to his complaints of race discrimination.

The Court concludes Mr. Canton was not subjected to an adverse employment action and, even assuming Mr. Canton is able to establish a prima facie case of retaliation, he failed to provide sufficient evidence that the legitimate business reasons offered by UPS for the relocation of his package car were pretextual. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (discussing burden shifting).

"[N]ot every employment decision amounts to an adverse employment action." *Brooks v. City of San Mateo*, 299 F.3d 917, 928 (9th Cir. 2000) (citations and internal quotations omitted); *Burlington N. & Sante Fe Ry Co. v. White*, 125 S. Ct. 2405, 2415 (2006). An adverse employment action includes "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing

ORDER ~ 10

to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). The Court concludes the transfer of Mr. Canton's package car to a different location within Spokane for loading is not an adverse employment action. A delivery driver spends a negligible part of his day at the loading location; accordingly, the Court finds the change in Mr. Canton's loading location did not constitute a significant change in employment status, especially since it did not impact pay, benefits, or level of responsibility. *See Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999). For similar reasons, the Court concludes the March 2005 meeting at which Mr. Hall caused the door to strike the back of Plaintiff's chair is not an adverse employment action.[3]

In addition, even if Mr. Canton had been able to make a prima facie showing of retaliation, the Court finds Mr. Canton failed to establish that UPS's legitimate nondiscriminatory business reason for changing the loading location of Plaintiff's package car was pretextual. *See Manatt*, 399 F.3d at 801. UPS must be able to respond to the need to balance the workload between its drivers; shifting the loading location of package cars assists in this legitimate business endeavor.

///

---

[3] In his response to the motion for summary judgment, Plaintiff identified an event that occurred during 2006 that caused him to receive a written warning. Plaintiff also notes two other incidents with supervisors that were confrontational. Although UPS submits that the Court should not consider these events because they were not disclosed by Plaintiff during discovery, the Court concludes, even accepting these events as true, they do not constitute retaliation.

ORDER ~ 11

Accordingly, for the reasons given above, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 52)** is **GRANTED**.

2. **Judgment** is to be entered in favor of Defendant with prejudice.

3. This file is to be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, provide copies to counsel, and **mail copies to the Plaintiff**.

**DATED** this ___9th___ day of May 2007.


                               S/ Edward F. Shea
                                  EDWARD F. SHEA
                       UNITED STATES DISTRICT JUDGE

Q:\Civil\2006\0097.msj.wpd

ORDER ~ 12